### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MURAD MUNAWAR KHAN, | |
| Plaintiff, | |
| v. | Civil Action No. 23-1576 |
| RENA BITTER, *et al.*, | Judge Beryl A. Howell |
| Defendants. | |

### <u>MEMORANDUM OPINION</u>

Plaintiff Murad Munawar Khan, a citizen of the United States currently residing in Miami, Florida, seeks to compel defendants, Rena Bitter, Assistant Secretary of the Bureau of Consular Affairs of the U.S. Department of State, Andrew Schofer, Deputy Chief of Mission of the U.S. Embassy in Pakistan, and Antony Blinken, Secretary of the U.S. Department of State (collectively "the Defendants"), in their official capacities, to adjudicate the visa petition of his wife, Fnu Asma, which has now been pending without decision for approximately twenty-nine months since the filing of the visa petition. Petition for Writ of Mandamus and Complaint for Injunctive Relief ("Compl.") ¶¶ 1–2, 10, 17, ECF No. 1. Plaintiff claims that defendants have unreasonably delayed adjudication of his wife's visa application under the Administrative Procedure Act, 5 U.S.C. § 706(1), and the Mandamus Act, 28 U.S.C. § 1361, and violated his due process rights under the Fifth Amendment. *Id.* ¶¶ 23–39. Defendants now move to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1), or, in the alternative, for failure to state a claim under Rule 12(b)(6). Defs.' Mot. to Dismiss ("Defs.' Mot.") at 1, ECF No. 6. For the reasons explained below, defendants' motion is granted.

## I.     BACKGROUND

A review of the statutory and regulatory background underlying the claims is below, followed by a summary of the factual and procedural history of this case.

### A.     Statutory and Regulatory Background

The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, allows for the issuance of immigrant visas, including for relatives of U.S. citizens. *See* 8 U.S.C. § 1154; 8 C.F.R. § 204.1(a)(1), (b). A U.S. citizen seeking permanent resident status for a spouse or other family member may fill out a Form I-130, Petition for Alien Relative, with U.S. Customs and Immigration Services ("USCIS"). 8 U.S.C. §§ 1154, 1151(b)(2)(A)(i) (defining a spouse as an "immediate relative[]" of a citizen for the purposes of Form I-130 petitioners); 8 C.F.R. § 204.1(a)(1). If USCIS approves the petition, the case is forwarded to the National Visa Center ("NVC") for processing. 8 C.F.R. § 204.2(a)(3). The NVC serves as the visa application processing center for the U.S. Department of State ("State Department"). *Id.*

Following approval of the petition, the foreign spouse must submit paperwork and processing fees to the NVC. *See* 22 C.F.R. § 42.67 (outlining application fees and additional documentation that an applicant must submit to the NVC to complete their application). After processing the requisite materials, the NVC schedules a consular interview for the applicant at the embassy with jurisdiction over the applicant's residence. *Id.* § 42.62. The consular officer must either issue or refuse the visa following the interview. *Id.* § 42.81(a).

### B.     Factual Background

In September 2021, plaintiff filed an I-130 visa petition with USCIS on behalf of his wife, Fnu Asma. *See* Compl. ¶¶ 1, 17. Plaintiff intended to secure lawful permanent resident status for Ms. Asma, who currently resides in Pakistan, to enable her to join him in the United States. *See*

2

*id.* ¶¶ 8, 19.  In May 2022, USCIS approved plaintiff's wife's visa petition and transferred it to the NVC.  *See id.* ¶¶ 18, 20.  In November 2022, the NVC notified plaintiff and indicated that the visa petition for Ms. Asma was "Documentarily Qualified," "meaning that all necessary documents had been submitted" and that the "visa application is pending to be scheduled for an interview." *Id.* ¶ 20.  Ms. Asma's case, according to the Department of State Consular Electronic Application Center (CEAC), is currently "at [the] NVC."  *Id.* ¶ 21 (alteration in original).  Plaintiff contends that since 2022, when USCIS approved plaintiff's I-130 petition, he has received no meaningful updates about the status of his wife's visa application.  *Id.* ¶ 22.

Plaintiff alleges that, as a result, he and his wife have suffered "significant personal, financial, and emotional hardship" due to the delay of their reunification.  *Id.* ¶ 6.  Plaintiff and his wife were married in August 2021 and have been separated since shortly after.  *Id.* ¶ 8.  They have been unable to plan for their future, have children, and start a family.  *Id.*  Plaintiff states that he has trouble focusing on his work and studies, which "has a negative impact on his career and future earning potential."  *Id.*  The delay has also hindered his wife's pursuit of her education and acquisition of a job in Pakistan or the United States, and placed significant financial strain on plaintiff, who must support his wife and pay her expenses.  *Id.* ¶ 9.

## C.    Procedural History

On June 2, 2023, approximately eight months after his last notification from the NVC stating that the visa petition for Ms. Asma was "Documentarily Qualified" and awaiting scheduling of an interview, Plaintiff filed a petition with three causes of action to "compel [d]efendants to take action on and adjudicate his wife's . . . I-130 visa application."  Compl. ¶ 1.  Plaintiff maintains that the defendants retain jurisdiction over his wife's visa application and that defendants have "a nondiscretionary duty to review and adjudicate" visa applications within a "reasonable time,"

which duty he seeks to enforce with relief under the Administrative Procedure Act ("APA") and the Mandamus Act. *Id.* ¶¶ 24–35. Plaintiff additionally alleges that the delay is "egregious" and "without any rational justification," and that he has suffered deprivation of his due process rights under the Fifth Amendment. *Id.* ¶¶ 38–39. Plaintiff requests a writ of mandamus directing defendants to adjudicate his wife's visa petition within fifteen calendar days or as soon as reasonably possible, along with attorneys' fees and costs under the Equal Access to Justice Act, 5 U.S.C. § 504, *et seq.*, and 28 U.S.C. § 2412, *et seq.*, and any other relief that may be appropriate. Compl. ¶ 40.

In August 2023, defendants moved to dismiss plaintiff's complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Defs.' Mot. at 1. With briefing complete, *see* Pl.'s Opp'n Defs.' Mot. Dismiss ("Pl.'s Opp'n"), ECF No. 7; Defs.' Reply Supp. Mot. Dismiss ("Defs.' Reply"), ECF No. 9, defendants' motion is ripe for resolution.

## II.   LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Wood v. Moss*, 572 U.S. 744, 757–58 (2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A facially plausible claim pleads facts that are not "'merely consistent with' a defendant's liability" but "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)); *see also Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012). In deciding a motion under Rule 12(b)(6), the court must consider the whole complaint, accepting all factual allegations as true, "even if doubtful in fact." *Twombly*, 550 U.S. at 555. Courts do not, however, "assume the truth of legal conclusions . . . nor . . . 'accept inferences that are unsupported by the

facts set out in the complaint.'" *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (internal

citation omitted) (quoting *Islamic Am. Relief Agency v. Gonzalez*, 477 F.3d 728, 732 (D.C. Cir.

2007)).   "In determining whether a complaint fails to state a claim," a court "may consider only

the facts alleged in the complaint, any documents either attached to or incorporated in the

complaint and matters of which [courts] may take judicial notice." *Trudeau v. FTC*, 456 F.3d 178,

183 (D.C. Cir. 2006) (quoting *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25

(D.C. Cir. 1997)).

## III.    DISCUSSION

Defendants argue that dismissal of the complaint is required because plaintiff's claimed

delay in the adjudication of his wife's visa is not unreasonable "as a matter of law under the factors

identified in *Telecommunications Research & Action Center*," Defs.' Mot. at 1–2 (citing

*Telecomms. Rsch. & Action Ctr. v. FCC* ("*TRAC*"), 750 F.2d 70, 80 (D.C. Cir. 1984)), and does

not support any claimed violation of plaintiff's due process rights, *id.* at 26.[1]   Defendants are

correct.

---

[1]      Defendants also seek dismissal for lack of subject matter jurisdiction to adjudicate this dispute under the
APA or Mandamus Act because no clear non-discretionary duty has been violated.   Defs.' Mot. at 8–15. The Court
assumes, without deciding, that plaintiff has identified a mandatory non-discretionary agency action in the form of
the statutory requirement that "[a]ll immigrant visa applications shall be reviewed and adjudicated by a consular
officer."  8 U.S.C. § 1202(b).  Absent binding precedent or even a consensus on this Court supporting plaintiff's
position that Section 1202(b) imposes a non-discretionary duty on the government to adjudicate visas, *see,
e.g.*, *Khamrabaeva v. Blinken*, No. 22-cv-1219 (RC), 2022 WL 4446387, at *5 (D.D.C. Sept. 24, 2022) (surveying
different approaches to this question), this assumption of reviewability allows consideration of the merits of this visa
mandamus claim.  *See, e.g.*, *Almaqrami v. Pompeo*, 933 F.3d 774, 784 n.3 (D.C. Cir. 2019) ("[C]ourts
'may assume without deciding that plaintiffs' statutory claims are reviewable' and proceed to the merits
'notwithstanding consular nonreviewability.'" (quoting *Trump v. Hawaii*, 585 U.S. 667, 683 (2018))); *Barazandeh v.
U.S. Dep't of State*, No. 23-cv-1581 (BAH), 2024 WL 341166, at *6, 2024 (D.D.C. Jan. 30, 2024) (assuming
plaintiffs' visa mandamus claims are reviewable under APA and turning straight to the *TRAC* factors); *Zandieh v.
Pompeo*, No. 20-cv-919 (JEB), 2020 WL 4346915, at *11 (D.D.C. July 29, 2020) (explaining that "because it finds
that the delay asserted" here is "not unreasonable," Court "need not decide whether plaintiffs' claims are reviewable
under the APA" (quoting *Ghadami v. U.S. Dep't of Homeland Sec.*, No. 19-cv-00397 (ABJ), 2020 WL 1308376, at
*7 (D.D.C. Mar. 19, 2020))); *Ghadami*, 2020 WL 1308376, at *7 (same); *Bagherian v. Pompeo*, 442 F. Supp. 3d  87,
94 (D.D.C. 2020) (same); *Didban v. Pompeo*, 435 F. Supp. 3d 168, 175 & n.4 (D.D.C. 2020) (same).  The Court thus
proceeds to the merits of plaintiff's claim.

A.      **Unreasonable Delay**

Defendants contend that plaintiff's allegations about the delay in adjudicating his wife's visa application, even if assumed to be true, are insufficient to state a plausible claim for relief. Defs.' Mot. at 14–26.   The law is well-settled that the APA requires agencies to "proceed to conclude a matter presented to [them]" in a "reasonable time," 5 U.S.C. § 555(b), and authorizes reviewing courts to "compel agency action unlawfully withheld or unreasonably delayed," *id.* § 706(1).   In determining whether a delay in agency action is unreasonable, the D.C. Circuit has enumerated six so-called "TRAC" factors for consideration:

> (1) [T]he time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.2d at 80 (internal citations omitted and formatting modified).   This standard applies to claims of unreasonable delay under both the Mandamus Act and the APA.   *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63–64 (2004); *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016).

At the outset, plaintiff tries to avoid application of the TRAC factors, arguing that due to the fact-intensive nature of the TRAC inquiry, evaluation of the factors is not appropriate at the motion to dismiss stage.   Pl.'s Opp'n at 17.   Indeed, the D.C. Circuit has cautioned that "[r]esolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court."   *Mashpee Wampanoag Tribal Council, Inc. v. Norton* ("*Mashpee*"), 336 F.3d 1094, 1100 (D.C. Cir. 2003).

Nevertheless, the TRAC factors have been applied at the motion to dismiss stage to determine "whether a [plaintiff's] complaint has alleged facts sufficient to state a plausible claim for unreasonable administrative delay." *Ghadami*, 2020 WL 1308376, at *7 n.6; *see also Bagherian*, 442 F. Supp. 3d at 94–96 (employing the TRAC factor analysis during the motion to dismiss stage); *Sarlak v. Pompeo*, No. 20-cv-35 (BAH), 2020 WL 3082018, at *5 (D.D.C. June 10, 2020) (same); *Didban*, 435 F. Supp. 3d at 175–76 (same).[2]  As in those cases, the record here provides sufficient factual background to evaluate the TRAC factors, and this Court finds that in this case, the agency delay in adjudicating plaintiff's wife's visa application is not unreasonable.

### 1.    TRAC Factors 1 & 2

The first TRAC factor—whether the agency follows a rule of reason in processing visas—is the most important, *In re Core Commc'ns Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008), and is "typically considered together" with the second TRAC factor—incorporating any indication from Congress as to the expected processing speed into that rule of reason, *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 317 (D.D.C. 2020).  Both factors weigh in defendants' favor.

Congress tends to give agencies "wide" discretion in their visa processing timelines. *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017) (finding that a two-year delay in processing a visa application is not unreasonable).  In fact, "no statutory or regulatory timeframe [exists] within which the State Department or a consular officer must re-adjudicate visa applications." *Isse v. Whitman*, No. 22-cv-3114 (BAH), 2023 WL 4174357, at *7 (D.D.C. June 26, 2023).  "Absent a congressionally supplied yardstick, courts typically turn to case law as a guide." *Sarlak*, 2020 WL 3082018, at *6.  Even though courts have drawn no bright lines to

---

[2]    When limited factual information is available in the record, some courts have determined that the *TRAC* factor analysis is premature at the motion to dismiss stage. *See, e.g.*, *Moghaddam v. Pompeo*, 424 F. Supp. 3d 104, 117 (D.D.C. 2020); *Thomas v. Pompeo*, 438 F. Supp. 3d 35, 44 (D.D.C. 2020).  Here, however, the record provides sufficient factual information to apply the *TRAC* factor analysis.

determine reasonableness, "[d]istrict courts have generally found that immigration delays in excess of five, six, seven years are unreasonable." *Yavari v. Pompeo*, No. 19-cv-02524 (SVW), 2019 WL 6720996, at *8 (C.D. Cal. Oct. 10, 2019) (citing *Siwen Zhang v. Cissna*, No. 18-cv-9696 (MWF), 2019 WL 3241187, at *5 (C.D. Cal. Apr. 25, 2019)).  Reasonableness in this context also "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Mashpee*, 336 F.3d at 1102.

Not only does the twenty-nine-month delay in plaintiff's wife's visa adjudication fall far short of the five-to-seven year delay noted to be potentially unreasonable in *Yavari*, that case was also decided prior to the global pandemic.  Consideration of agency resources and the context of an agency action is critical to the determination of reasonableness.  *Id.*; *see also Tate v. Pompeo*, 513 F. Supp. 3d 132, 150–51 (D.D.C. 2021) (finding that the government's determination of "how to allocate scarce resources in a global pandemic outweigh[s] [visa applicants'] interests in immediate adjudication of their visas").  In 2020, the year before plaintiff filed a visa petition on behalf of his wife, U.S. consulates and embassies shut down across the globe due to the COVID-19 pandemic.  The ensuing backlog of visa applications and the ongoing importance of public health considerations in consular operations continue to affect the processing of immigration procedure today.  *See* Defs.' Mot. at 4.  The visa backlog due to the COVID-19 pandemic and strain on agency resources following the health crisis is important context coloring the processing times for visa applications.  These circumstances further weigh in defendants' favor in the TRAC factor analysis.  *See Murway v. Blinken*, No. 21-cv-1618 (RJL), 2022 WL 493082, at *3 (D.D.C. Feb. 16, 2022) (finding that "operational delays due to the COVID-19 pandemic favor the

[g]overnment on the first two [TRAC] factors"); *Rahimian v. Blinken*, No. 22-cv-785 (BAH), 2023 WL 143644, at *7 (D.D.C. Jan. 10, 2023) (same); *Zaman v. U.S. Dep't of Homeland Sec.*, No. 19-cv-3592 (ABJ), 2021 WL 5356284, at *6 (D.D.C. Nov. 16, 2021) (same); *Khan v. Blinken*, No. 21-cv-1683 (JEB), 2021 WL 5356267, at *3 (D.D.C. Nov. 17, 2021) (same).

## 2.   TRAC Factors 3 & 5

The third and fifth TRAC factors are related and together examine "the nature and extent of the interests prejudiced by the delay," including whether "human health and welfare" might be implicated.  *TRAC*, 750 F.2d at 80.  Plaintiff alleges that he has faced serious personal hardship from the delay of his wife's visa adjudication and, contrary to defendants' assertion, Defs.' Mot. at 24, the third and fifth TRAC factors thus weigh slightly in plaintiff's favor.

Prolonged separation from a spouse, fiancé, or other immediate family member may be considered a risk to human health and welfare.  *See Didban*, 435 F. Supp. 3d at 177 (finding the third and fifth TRAC factors to weigh in favor of plaintiff given the continued separation of spouses); *see also Bagherian*, 442 F. Supp. 3d at 95 (conceding that plaintiff's long separation from her family threatened her health and welfare).  Plaintiff alleges that he has suffered financial, emotional, and health-related consequences because of his prolonged separation from his wife. Compl. ¶¶ 6–9; Pl.'s Opp'n at 6–7, 22.

Defendants do not contest that plaintiff's own wellness has been negatively affected by the long-term separation from his wife.  *See* Defs.' Mot. at 24.  Nonetheless, they maintain that the third and fifth factors weigh in their favor because expediting review in plaintiff's case may cause harm to the health and welfare of those visa applicants whose applications would be further delayed by giving plaintiff priority and expediting adjudication of his wife's application.  *Id.* at 24–25.  In the aggregate, delaying those other applications in favor of plaintiff's would, according

to defendants, "direct resources away from the adjudications that the Department and the U.S. Embassy have identified as more urgent." *Id*. at 24.

Even if defendants' point about resource allocation may be true, the individual health or welfare of this specific plaintiff is most relevant when evaluating TRAC factors three and five. *See*, *e.g.*, *Rahimian*, 2023 WL 143644, at \*8; *Sarlak*, 2020 WL 3082018, at \*6. Thus, considering the harm experienced by this particular plaintiff if his wife's visa application is further delayed, TRAC factors 3 and 5 weigh in plaintiff's favor.

### 3.    TRAC Factor 4

The fourth TRAC factor considers whether "expediting delayed action" will have a harmful effect on "agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80. Defendants correctly point out that this factor carries "significant weight" in the TRAC analysis. Defs.' Mot. at 21; *see Mashpee*, 336 F.3d at 1100. This factor weighs heavily in defendants' favor, particularly in context of the ongoing recovery efforts from the COVID-19 pandemic.

Granting expedited agency action is considered inappropriate when that relief "would simply 'reorder' a queue of applicants seeking adjudication" and when no concomitant "'net gain' in adjudications is achieved." *Tate*, 513 F. Supp. 3d at 149 (quoting *In re Barr Labs., Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991)). In particular, "where resource allocation is the source of the delay, courts have declined to expedite action because of the impact on competing priorities." *Liberty Fund, Inc. v. Chao*, 394 F. Supp. 2d 105, 117 (D.D.C. 2005).

Plaintiff claims that he is "not asking for his wife to be put ahead of others; he is merely asking that the [d]efendants complete the visa processing by scheduling a consular interview within a reasonable period." Pl.'s Opp'n at 25. Post-pandemic, such normal processing means accommodating the backlogs of the hundreds of thousands of visa applications still awaiting

adjudication due to staffing and resource shortages arising during the height of the COVID-19 pandemic. Expediting review in plaintiff's wife's case "would merely pull government resources" away from other visa adjudications and agency business. *Bagherian*, 442 F. Supp. 3d at 95; *see also Didban*, 435 F. Supp. 3d at 176 (holding that reordering agency business "would impermissibly interfere with the agency's 'unique' and 'authoritative [ ] position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way'" (omission in original) (quoting *In re Barr Labs., Inc.*, 930 F.2d at 76)); *see National Visa Center (NVC) Immigrant Visa Backlog Report*, U.S. DEP'T OF STATE, https://perma.cc/HD67-HPYW (providing data and information about the backlog in visa applications still faced by the Department of State post-pandemic). In addition, plaintiff advances no explanation for why other visa applications would not be further delayed if defendants expedited his wife's application. *See* Pl.'s Opp'n at 25. Since the D.C. Circuit recognizes "no basis for reordering agency priorities," *In re Barr Labs., Inc.*, 930 F.2d at 76, this factor weighs in favor of defendants.

### 4.   TRAC Factor 6

The sixth and final TRAC factor is neutral in this analysis and does not favor either side. This factor states that "the court need not 'find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.'" *TRAC*, 750 F.2d at 80 (quoting *Pub. Citizen Rsch. Grp. v. Comm'r, Food & Drug Admin.*, 740 F.2d 21, 34 (D.C. Cir. 1984)). Plaintiff alleges that the "opacity of embassy priorities and procedures in scheduling interviews is a natural veil that may obscure 'agency lassitude.'" Pl.'s Opp'n at 25. He does not go so far, however, as to allege any bad faith on the part of the State Department or its staff. While plaintiff is understandably frustrated with the visa application process given his long separation from his wife, the delay alone does not demonstrate any agency misconduct.

11

### 5.      TRAC Factors Considered in Totality

Taking all six TRAC factors as a whole, plaintiff has not stated a claim of unreasonable delay under the Mandamus Act or the APA.  In other cases, delays in visa processing far longer than that claimed by plaintiff here have resulted in the same conclusion.  *See, e.g.*, *Rahimian*, 2023 WL 143644, at \*9 (reaching the same conclusion based on visa processing delay of forty-one months); *Logan v. Blinken*, No. 21-cv-2275 (FYP), 2022 WL 3715798, at \*7 (D.D.C. Aug. 29, 2022) (same based on visa processing delay of thirteen months before the filing of plaintiff's suit); *Arab v. Blinken*, 600 F. Supp. 3d 59, 72 (D.D.C. 2022) (same based on visa processing delay of thirty months); *Zaman*, 2021 WL 5356284, at \*6–8 (same based on visa processing delay of forty-two months); *Sarlak*, 2020 WL 3082018, at \*6 (same based on visa processing delay of two years). The rule of reason found in prior caselaw, the context of agency resource backlogs stemming from the COVID-19 pandemic, and the fact that granting plaintiff relief would merely reorder his wife's application in the queue, all support the conclusion that the delay in adjudication of plaintiff's wife's visa is not unreasonable.  While TRAC factors three and five do weigh somewhat in plaintiff's favor, a holistic review of the factors does not allow these two to eclipse the rest.  In this situation, "the government's interests in balancing its own priorities" outweighs the individual harm done to plaintiff and his family as they await a final decision.  *Milligan*, 502 F. Supp. 3d at 320 (quoting *Bagherian*, 442 F. Supp. 3d at 95–96).

This Court has deep sympathy for plaintiff and his wife during their separation, but must also recognize that countless other families are facing similarly difficult circumstances as they await immigration decisions.  *See Burwell*, 812 F.3d at 192 (collecting cases "reject[ing] mandamus claims that would have had the effect of allowing the plaintiffs to jump the line,

functionally solving their delay problem at the expense of other similarly situated applicants"). Plaintiff's claim thus must be dismissed for failure to state a claim.

### B.      Plaintiff's Due Process Claim Fails

Finally, plaintiff argues that he has a fundamental right to be reunited with his wife and that delay in the adjudication of his wife's visa application deprives him of his procedural and substantive due process rights under the Fifth Amendment.  Compl. ¶¶ 37–39; Pl.'s Opp'n at 25. Defendants counter that plaintiff has not asserted a constitutionally protected interest that has been violated.  Defs.' Mot. at 26.

Plaintiff makes both a procedural and a substantive due process argument.   For a substantive due process claim, plaintiff must plausibly allege that he has been deprived of "a liberty or property interest."   *Zaman*, 2021 WL 5356284, at *8 (quoting *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (per curiam)).   The due process clause of the Fifth Amendment "forbids the government to infringe certain 'fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest."  *Reno v. Flores*, 507 U.S. 292, 301–02 (1993) (emphasis omitted).   Constitutionally protectable liberty interests can be identified using evidence of such interests in "this Nation's history and practice." *See Kerry v. Din*, 576 U.S. 86, 86 (2015) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 724 (1997)); *see also Dean v. U.S. Dep't of Homeland Sec.*, No. 21-cv-2002 (CKK), 2022 WL 2785967, at *8 (D.D.C. July 15, 2022) ("The Supreme Court has instructed that liberties protected by the due process clause 'must be defined in a most circumscribed manner, with central reference to specific historical practices.'" (quoting *Obergefell v. Hodges*, 576 U.S. 644, 671 (2015))).

Although plaintiff points out that Congress has at times enacted legislation that facilitates family reunification, such as through family-based immigrant visas, Pl.'s Opp'n at 27, laws have

also been enacted to limit spousal immigration.  *See Colindres v. U.S. Dep't of State*, 71 F.4th 1018, 1022–23 (D.C. Cir. 2023) (detailing statutes from as early as 1798 that regulated immigration to the United States and did not provide guaranteed exceptions for spouses).  Though *Colindres* is not cited by plaintiff, the D.C. Circuit concluded that review of legal history reveals that "citizens have no fundamental right to live in America with their spouses."  *Id.* at 1023. Plaintiff persists, positing that an implied fundamental right to family unity can be found in prior Supreme Court decisions recognizing the value of marriage, establishing a home, and bringing up children.  *See* Pl.'s Opp'n at 26–27.  *Colindres* is binding precedent in this Circuit, however, and any recognition of an implied right to family unity must be squared with the holding in *Colindres*. *See* Defs.' Reply at 15 ("Plaintiff offers no argument to refute the Circuit's holding [in *Colindres*].").  To the extent that fundamental rights to marry or raise children exist, those rights do not encompass the desire to live in the United States with one's spouse.  *See Colindres*, 71 F.4th at 1023.  Although plaintiff's permanent reunification with his wife in the United States has been delayed, he has not been prevented from forming a legal union or otherwise associating with his wife, and thus has identified no violation of a substantive right.

Moreover, as defendants rightly note, plaintiff's wife also does not enjoy a fundamental right to the visa she seeks.  *See* Defs.' Mot. at 26.  A noncitizen does not have a right to a visa, *see Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972), or "a constitutionally-protected interest in the procedures by which such visas are obtained," *Smirnov v. Clinton*, 806 F. Supp. 2d 1, 12 (D.D.C. 2011).  Nor does plaintiff's wife have "a constitutional right to have [her visa] . . . doled out as quickly as [s]he desire[s]."  *Mudric v. Att'y Gen.*, 469 F.3d 94, 99 (3d Cir. 2006).  Plaintiff's wife has not been denied adjudication of her visa; her visa petition is still pending and will, following

14

an interview before a consular officer, ultimately be adjudicated.  Thus, again, plaintiff and his wife have not been denied any substantive right due to the delay of her visa processing.

In order to succeed on a procedural due process claim, plaintiff must "identify a cognizable liberty or property interest."  *See Scahill v. District of Columbia*, 909 F.3d 1177, 1186 (D.C. Cir. 2018); *Dean*, 2022 WL 2785967, at *9 (citing *Mahmood v. D.H.S.*, No. 21-cv-1262 (RC), 2021 WL 5998385, at *9 (D.D.C. Dec. 20, 2021)).  "A procedural due process violation under the Fifth Amendment occurs when a government official deprives a person of his property without appropriate procedural protections."  *English v. District of Columbia*, 717 F.3d 968, 972 (D.C. Cir. 2013).  Given that plaintiff has failed to identify a liberty or property interest of which he or his wife have been deprived, his procedural due process claim also fails at this threshold step.

## IV.   CONCLUSION

For the foregoing reasons, defendants' motion to dismiss plaintiff's petition for writ of mandamus is granted.  An Order consistent with this Memorandum Opinion will be filed contemporaneously.

Date:   February 23, 2024

_____
**BERYL A. HOWELL**
United States District Judge